### A. R. Logan *v.* The State.

1. Illegally Practising Medicine. —Informations for this offence need not allege that the accused does not come within the exceptions specified in the provisos to the fifth section of the act of August 21, 1876, " to regu-late the practice of medicine." Those exceptions are matter of defence. Note, in the opinion, an information held sufficient.

2. MEDICAL EXAMINERS. — The Constitution of 1876 expressly empowers the Legislature "to pass laws prescribing the qualifications of practitioners of medicine in this State." *Held,* that this provision enabled the Legislature to authorize and require each district judge to appoint a board of medical examiners for his district, as provided for in the third section of said act. And, irrespective of this express constitutional provision, the general police power vested in the Legislature sufficed for the purpose.

3. THE POLICE POWER contemplates systematic precautionary legislation for the prevention either of crimes or calamities, and extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and to the protection of all property within the State.

4. CONSTITUTIONAL LAW. — In determining whether an exercise of the police power by a State Legislature is warranted by the Constitution of the State, the rule is to look to the restrictions and limitations imposed on the Legislature by the Constitution, and not to the express grants of legislative power.

5. CHARGE OF THE COURT. — The act of August 21, 1876, "to regulate the practice of medicine," did not take effect until ninety days after that date; and, therefore, in a trial for a violation of its provisions, it was error to instruct the jury for conviction if they found that the accused, without complying with its requirements, had practised *at any time after its passage.*

APPEAL from the County Court of Dallas. Tried below before the Hon. R. H. WEST, County Judge.

The fine imposed on the appellant was $250.

*Thurmond & Willard,* for the appellant. The law provides that the appointment of the members of such board shall be by the several district judges in their respective districts. The law, so far as it confers the appointing power upon the district judges, is unconstitutional and void, and under it no legal board can be organized. The Constitution of this State divides the power of the government into three departɩ ¬ts, — legislative, executive, and judicial, — and prohibits ɪ. ¬ṣ of one department from exercising the functions of ⸳⸳ ¬ʳ⸳ departments, The appointment of medical examiners ɪ. ⸳ ᵗᵘdicial function.

It belongs to the executive department of the government. Case of Supervisors of Elections, 114 Mass. 247.

The law having failed to provide for the organization of a legal board of medical examiners, and there being no person, officer, or board authorized to grant certificates of qualification, the law stands inoperative until a legal board of medical examiners is provided by law.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J.   The appellant was tried and convicted in the County Court for an alleged violation of the act of August 21, 1876 (Gen. Laws Fifteenth Legislature, 321), entitled " An act to regulate the practice of medicine."   The information charges as follows :
" The State of Texas, }
" County of Dallas, }
   " In the name and by the authority of the State of Texas, now comes George N. Aldredge, county attorney of Dallas County, State of Texas, and presents in and to the County Court of Dallas County, State aforesaid, that one A. R. Logan, on the 19th day of May, in the year of our Lord one thousand eight hundred and seventy-seven, with force and arms, in the county and State aforesaid, did unlawfully practise medicine, without complying with the laws regulating the practice of medicine ; without furnishing to the clerk of the District Court of Dallas County, State of Texas, a certificate of qualification, as required by law ; and without having been regularly engaged in the practice of medicine, in any of its branches, in this State five consecutive years prior to the 1st day of January, in the year of our Lord one thousand eight hundred and seventy-five ; and without then and there being a person authorized by law to

practise medicine, and without then and there having and possessing the requisites required by law to practice medicine in the State of Texas, as required by law; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

"GEORGE N. ALDREDGE,

"County Attorney of Dallas County."

The evidence was the following, as agreed to and certified by the county judge:

"First. The defendant practised medicine in the county of Dallas, State of Texas, after the act of August 21, 1876, went into effect.

"Second. That the defendant never filed with the clerk of said county a diploma, or a certificate of qualification from the board of medical examiners.

"Third. That a board of medical examiners was duly appointed for the Eleventh Judicial District, under the law of August 21, 1876, and the defendant went before them, was examined, and rejected.

"Fourth. That at the time of the passage of the act of August 21, 1876, the defendant was practising medicine in this State for a livelihood, and had been so practising medicine in this State for several years just prior to the passage of said act, and had, prior thereto, attended a regular course of study and lectures at Rush Medical College, and received the degree of *Doctor of Medicine;* that said college is a regularly established and well accredited medical college, duly and legally incorporated under and by virtue of the laws of the State of Illinois, and situated at Chicago, in said State.

"Fifth. That, in the year 1869, defendant received a diploma from said medical college, duly signed and executed by the proper officers of said college, and said diploma is in the words and figures following, to wit: 'To all to whom these presents shall come, president, trustees, and professors

send greeting: Whereas, it is an established usage to confer academical degrees on those whose character and knowledge entitle them to respect and confidence, know ye that Augustus R. Logan, having complied with the requirements of our college, and given ample evidence of his learning and skill, we have, by the authority of the State of Illinois, conferred on him the degree of *Doctor of Medicine*, together with all the rights and privileges thereunto belonging. In testimony whereof, we have granted this diploma, signed with our hands, and sealed with the seal of our college. Done at Chicago, this third day of February, Anno Domini, one thousand eight hundred and sixty-nine, and of American Independence the ninety-third.'

[Signed by the president, secretary, trustees, and professors of said college, in due form.]

"Sixth. That during all the time defendant practised medicine in the State of Texas he held said diploma, both before and after the passage of the act of August 21, 1876, but it was never filed by him with the clerk of the District Court of said county.

"Seventh. It is further admitted that the defendant practised medicine in the county of Dallas, State of Texas, after he had been examined and rejected by the board of medical examiners organized under the act of August 21, 1876.

"Eighth. It is further agreed that the board of medical examiners of the Eleventh Judicial District is composed of men holding diplomas, which have been duly recorded by the clerk of the District Court of the proper county, and that they have no other certificate of qualification."

Motions for a new trial and in arrest of judgment were made and overruled, and an appeal is prosecuted to this court upon the following assignment of errors:

"1. The court erred in its charge to the jury, as shown in bill of exceptions No. 1.

"2. It was error for the court to charge the jury that the

defendant was not qualified to practise medicine for a livelihood, under the act of May 16, 1873, unless he had filed his diploma with the clerk of the District Court of Dallas County, Texas.

" 3. The court erred in overruling defendant's motion for a new trial.

" 4. The court erred in overruling defendant's motion in arrest of judgment."

Inasmuch as the questions raised by the motion in arrest go to the foundation of this prosecution, the fourth ground of error assigned, to wit, the overruling of the motion in arrest of judgment, first claims attention.

The grounds of the motion are : 1. The information is insufficient in law.   2. The information charges the defendant with no offence known to the laws of the State of Texas.   3. The information does not charge that the defendant resided or sojourned in the county of Dallas.   4. The information does not charge that the defendant had not already been qualified for the practise of medicine under the act of May 16, 1873.

The argument in support of this assignment of errors appears to be, *first*, that the information should have charged the proper negative averment that the accused did not come within any one of the *provisos* set out in the statute creating the offence charged ; and, *secondly*, that the provisions made in the third section of the act for the appointment by the judges of the District Courts of the several judicial districts of boards of medical examiners are unconstitutional, inoperative, and void ; or, as stated in the brief of counsel, " the law having failed to provide for the organization of a legal board of medical examiners, and there being no person, officer, or board authorized to grant certificates of qualification, the law stands inoperative until a legal board of medical examiners is provided by law."

We are of opinion that neither one of these positions is

tenable. The people of this country have long realized the necessity of legal protection against incompetents and pretenders in the practice of medicine, and of providing some means for inquiring into the qualifications of those who claimed to possess the necessary prerequisites to practise among all classes this important profession. At a very early day, whilst Texas was an independent republic, the Congress provided by law for the creation of a board of medical censors, for the examination of those who desired to practise the healing art. This law, however, after remaining upon the statute-books a *dead letter*, was finally repealed. Again, in 1873, the Legislature passed an act entitled "An act to regulate the practice of medicine." Gen. Laws 1873, p. 74.

Not being satisfied with this, the people of the State, when assembled in convention, through their representatives, to frame a Constitution, provided as follows:

· "The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State." Gen. Prov., art. 16, sec. 31. And under the authority of this constitutional warrant the law now in force, and under which this prosecution was had, was enacted.

The statute declares (sec. 1) that no person shall be permitted to practise medicine * * * in this State without first having a certificate of qualification from some authorized board of medical examiners, as hereinafter provided. (Sec. 2) That every person who may hereafter engage in the practice of medicine, in any of its branches or departments, in this State shall, before entering upon such practice, furnish to the clerk of the District Court of the county in which such practitioner may reside or sojourn his certificate of qualification. (Sec. 3) That the presiding judges of the District Courts of the several judicial districts shall, at the first regular term of their courts after this act shall have become a law, or as soon thereafter as practicable,

severally appoint a board of medical examiners for their·
respective districts, to be composed of not less than three
practising physicians of known ability, and having certi--
ficates of qualification under the "Act to regulate the
practice of medicine," passed May 26, 1873.    *    *    *    It
shall be the duty of said board of medical examiners to·
examine all applicants for certificates of qualification to·
practise medicine, in any of its branches or departments,
in this State, whether such applicants are furnished with
diplomas or not, upon the following named subjects, to wit:·
Anatomy, physiology, obstetrics, chemistry, pathological
anatomy, and pathological surgery; said examination to·
be thorough.    When said board of medical examiners shall
have been satisfied as to the qualifications of said applicant,
they shall grant a certificate to that effect, which certificate·
shall be recorded with the clerk of the District Court of the·
county in which said applicant may reside or sojourn, as·
provided for in section 2 of this act, which certificate shall.
entitle him to practise anywhere in this State.    *    *    *
(Sec. 5.) That any person violating any of the provisions·
of this act shall be guilty of a misdemeanor, and, on con-·
viction thereof before any court having competent juris-·
diction, shall be fined in any sum not less than $50 and not
more than $500.

It should be noticed, in this connection, that by section·
6 the act of 1873 is repealed; so that this prosecution must
stand or fall by the provisions of the act of August 21, 1876.

We are of opinion that all of the provisions of the act
under consideration, as above set out, and independent of·
any constitutional warrant for its enactment, would be main-
tainable under the police power of the State; that, under·
this general power, the Legislature is the proper judge as·
to what regulations are demanded in dealing with the prop- ·
erty and restraining the actions of individuals.    On this
subject it is said: "The police of the State, in a compre--

hensive sense, embraces its system of internal regulation, by which it is sought, not only to preserve public order and prevent offences against the State, but also to establish, for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to ensure to each the uninterrupted enjoyment of his own, so far as reasonably consistent with the like enjoyment of the rights of others." Cooley's Const. Lim., marg. p. 572.

Police is a general system of precaution, either for the prevention of crimes or calamities. "This police power of the State extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim, *sic utere tuo ut alienum non lœdas*, which, being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others." Id. 573, and cases there cited.

"And, again, [by this] general police power of the State, persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the Legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned." Id. 574, marg. p., and authorities there cited.

On these authorities (and they might be extended), we are of opinion the Legislature could well have anticipated the great danger likely to result to the people of the State, who cannot be supposed to be competent to judge of the qualifications of those who hold themselves out as qualified to practise this most abstruse profession, and to provide by law a means by which they might have some protection for the comfort, health, and even the lives of the people against

those who propose to administer to their necessities, afflictions, and misfortunes without the necessary study and preparation. How much more so, then, must the necessity exist, and how much more forcible the argument, when we bear in mind the special grant of authority in the Legislature to enact the law, as found in the constitutional provisions above quoted. For some of the applications of these rules, see *Ex parte Cooper*, 3 Texas Ct. App. 489, and authorities there cited; *Davidson* v. *The State*, 4 Texas Ct. App. 545.

In the construction of an act of a State Legislature with reference to its constitutionality, the rule is to ascertain whether the Legislature is restricted or limited in its action by any provision of the State Constitution, and not for a grant of power, as in the Constitution of the United States; and if there is no restriction, generally, the courts uphold the act. *Ex parte Mabry*, decided at the present term, and authorities there cited, *ante*, p. 93.

We are unable to see the force of the argument that the district judges have no power to appoint the board of medical examiners, as provided in the third section of the act of August 21, 1876. These boards are not officers in any constitutional sense, that we can perceive, but merely appointees. The law gives the authority to make the appointment, and the Constitution does not prohibit it, so far as we have been able to discover; and, therefore, we hold that this authority must be maintained as set out in the act. The mode of proceeding under the law required the appointment of these examiners, and we see no reason why the Legislature could not bestow the power to appoint upon the district judges.

In the case of *Blasdell* v. *The State*, decided at a former day of the present term, we had occasion to examine the statute under consideration, with reference to the provisos appended to the fifth section, and, after a consideration of the

authorities, we there held "that these provisions are not necessarily to be construed as within the enacting clause; that any act which would violate the provisions of the *act* could be set out substantially in the language of the act, without noticing the matter contained in the *provisos;* and, therefore, in declaring upon the statute, either by indictment or information, it would not be obligatory upon the pleader to negative by averment any person or matter embraced in the provisos, or either of them; and that the matters embraced in the provisos are properly matters of defence."

This, we are of opinion, is a correct interpretation of the statute. To our minds, one main ground of the general rule, which is conceded to be a correct one, — "that when an offence is created by statute, and there is an exception in the enacting clause, the indictment must negative the exception,"— is that, in declaring upon a statute, the indictment should set out the offence in the language of the statute, unless something further enters into the offence, in order to avoid a variance between the statute and the indictment; and if the words of the statute properly designate the offence, and can be so pleaded without creating such variance, the proviso need not be negatived. See the case, and authorities there cited, *ante*, p. 263.

If the accused in the present case was within these provisos of the statute, he could have pleaded that fact in defence, or he could have given it in evidence under the plea of not guilty. It is conceded that this construction may work hardship in isolated cases, yet it is believed that it does not deprive any one of any legitimate defence; and that any hardship or inconvenience parties may be subjected to will be greatly overbalanced by the benefits resulting from the act, by the protection it will afford against permitting any but those who are properly qualified to practise a profession so liable to abuse, and which the community

generally are so utterly disqualified to protect themselves against. The act is believed to be in harmony with the Constitution, and should be enforced.

We are of opinion that the court did not err in overruling the motion in arrest of judgment.

The motion for a new trial is based upon the evidence, and because the verdict is contrary to law, and supposed error in the charge of the court, and that the amount of the fine imposed is excessive. The evidence, as above set out, is amply sufficient to support the finding of the jury, and the verdict is lawful. With reference to the charge of the court, it is stated in a bill of exceptions taken on the trial that the court, on its own motion, charged the jury as follows: " The defendant could only be qualified to practise medicine, under the act of 1873, in one of two ways : First, by filing his diploma with the clerk of the District Court of the county ; second, by filing with the clerk of the District Court a certificate of qualification from the board of medical examiners of the county. And if he failed to file with the clerk of the District Court a diploma or a certificate of qualification prior to the passage of the law of August 20, 1876, then he has not qualified to practise medicine under the act of May 26th, 1873. And if you further find from the evidence that the defendant has practised medicine in the county of Dallas, State of Texas, since the 20th day of August, 1876, without first filing with the clerk of the District Court of Dallas County a certificate of qualification from the board of medical examiners of the Eleventh Judicial District, then you will find him guilty, and assess his punishment," etc.

The charge makes the guilt of the defendant to turn, in part, at least, upon the question whether the defendant had practised medicine in Dallas County since August 20, 1876, and without having a certificate of qualification from the board of examiners provided by the act of August 21, 1876. (The date, as mentioned in the bill of excep-

tions, is August 20, 1876, which, we suppose, was intended for the date of the passage of the act, which appears to have been approved on August 21, 1876.) This, in our opinion, was error. The act, whilst it was approved on August 21, 1876, did not go into effect until ninety days after the adjournment of the Legislature, which, agreeably to the certificate of the Secretary of State appended to the General Laws of 1876, took place on August 21, 1876; and so, the act was not in force at the time mentioned in the charge of the court. It was, therefore, not the law of the case to make the guilt of the accused depend upon his having violated that act before it went into operation; and, for this reason, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*